IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 02:06cr223-MEF |
| | ) | |
| KAREN KILGO ROBINSON | ) | |

RESPONSE TO KAREN KILGO ROBINSON'S MOTION TO SUPPRESS

Comes now the United States of America, by and through Leura G. Canary, United States Attorney for the Middle District of Alabama, and hereby requests that this Honorable Court deny Defendant's Motion to Suppress. As grounds in support of this Response, the United States sets forth the following:

FACTS

On June 1, 2006, United States Customs and Border Protection (CBP) Inspector D. Nugent was working foreign mail in Chicago, Illinois. Chicago is a port-of-entry for incoming international mail. While using an x-ray machine, Nugent intercepted a package from Malburg, Germany[1]. The package was addressed to Adam Robinson at 1708 Formosa Court, Deatsville, Alabama, 36022 USA. The package also had a marking that read: "CO-2-Set."[2] Despite the marking, the x-ray image displayed a suspected firearms silencer - not a "CO-2-Set." Understandably suspicious of a

---

[1] According to Investigator Nugent, all international mail is processed through an x-ray machine. On the date in question, as the package from Germany was being x-rayed, Nugent saw what appeared to be a firearms silencer. Based upon his observation and the markings on the package, Investigator Nugent was naturally suspicious.

[2] CO2 generally stands for carbon dioxide. It is a chemical compound composed of one carbon and two oxygen atoms. Carbon dioxide is often used as an inexpensive, nonflammable pressurized gas. Steel capsules containing carbon dioxide are widely sold in the United States as sources of compressed gas for air-guns, paint-ball markers, bicycle tires and seltzer.

suspected firearms silencer (mislabeled as a "CO-2-Set") sent via international mail from Malburg, Germany, to Deatsville, Alabama, Inspector Nugent searched the package. Upon opening the package, Inspector Nugent discovered a suspected firearm silencer and instructions detailing how the item should be attached to a firearm.

Immediately, the suspected silencer was sent to Immigration and Customs Enforcement Special Agent David Henderson in Montgomery, Alabama. After Agent Henderson received the package, he transferred it to Special Agent Timothy Fitzpatrick of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), Montgomery Field Office. From Montgomery, Special Agent Fitzpatrick sent the suspected silencer to the ATF Firearms Technology Branch in Washington, D.C. Once in Washington, the suspected silencer was confirmed to be an item that required registration with the National Firearms Registration and Transfer Record. A check of the National Firearms Registration and Transfer Record indicated no silencers registered to Adam Robinson.

On June 14, 2006, Chief United States Magistrate Judge Charles S. Coody authorized an anticipatory search warrant for 1708 Formosa Court, Deatsville, Alabama, 36022. On June 15, 2006, federal agents conducted a controlled delivery of the silencer to 1708 Formosa Court, Deatsville, Alabama, 36022. Once the silencer was inside the residence, agents executed the anticipatory search warrant. In addition to recovering the silencer, agents also recovered pipe bombs, improvised explosive devices, and home-made firearm silencers. While securing this evidence, Karen Robinson made incriminating statements to federal agents. None of the items recovered by law enforcement were registered with the National Firearms Registration and Transfer Record as required by federal law.

During the course of the search, agents also seized personal computers believed to contain

evidence relating to the illegal possession or manufacture of firearm silencers or destructive devices. On August 8, 2006, United States Magistrate Judge Susan Russ Walker authorized the United States to search the contents of Adam Robinson's computer. As anticipated, the computer contained evidence of Adam Robinson's possession or manufacture of illegal firearms or destructive devices.

Currently, Karen Robinson seeks to suppress all the evidence against her because she mistakenly believes Inspectors Nugent needed "reasonable suspicion" to search foreign mail as it entered the United States at a port-of-entry. Furthermore, she attacks the sufficiency of probable cause necessary to search her residence. In sum, Karen Robinson hopes the suppression of the border search will lead to suppression of all other evidence secured against her. Karen Robinson's hopes are misplaced.

## ANALYSIS

**I.    STANDING TO OBJECT - SEARCH OF INTERNATIONAL MAIL**

Karen Robinson has no expectation of privacy in international mail sent from Malburg, Germany, to her husband in Deatsville, Alabama. Likewise, searches and seizures of international mail conducted at a United States port-of-entry are statutorily authorized pursuant to 19 U.S.C. § 1582 and such searches require no "suspicion" whatsoever. Finally, the Fourth Amendment imposes no limitation on searches of international mail conducted at a port-of-entry. See United States v. Pringle, 576 F.2d 1114 (5th Cir. 1978).

According to established law, a party alleging an unconstitutional search under the Fourth Amendment must establish both a subjective and objective reasonable expectation of privacy in order to succeed. See Katz v. United States, 389 U.S. 347 (1967). The subjective component requires that a person exhibit an actual expectation of privacy, while the objective component

requires that "the privacy expectation be one that society is prepared to recognize as reasonable." See United States v. Robinson, 62 F.3d 1325 (11th Cir. 1995). Importantly, the defendant bears the burden of proving a legitimate expectation of privacy in the areas searched. See Rawlings v. Kentucky, 448 U.S. 98 (1980); United States v. Cooper, 133 F.3d 1394 (11th Cir. 1998). Finally, where a defendant in a motion to suppress fails to allege facts that, if proved, would establish the defendant's standing to contest a search, the district court is not required to hold an evidentiary hearing. See United States v. Cooper, 203 F.3d 1279 (11th Cir. 2000).

In the case at bar, Karen Robinson's failure is two-fold. First, she fails to address 19 U.S.C. § 1582's authority to conduct international mail searches at a port-of-entry. Second, she fails to establish any expectation of privacy under the Fourth Amendment in international mail, addressed to her husband, searched at a port-of-entry. Despite her burden, she has failed to establish either the subjective or objective component to achieve standing under the Fourth Amendment. Absent standing, this Honorable Court need not waste judicial resources adjudicating Karen Robinson's claim of constitutional violation. See id.

## II.    SEARCH AND SEIZURE OF INTERNATIONAL MAIL

Customs officials are authorized "to search any trunk or envelope, wherever found, in which he may have a reasonable cause to suspect there is merchandise which was imported contrary to law." See 19 U.S.C. § 482(a). Likewise, 19 U.S.C. § 1582 grants authority to certain officers and agents of the government to search "persons and baggage . . .coming into the United States from foreign countries . . .." Furthermore, "Property may be seized, if available, by any Customs officer who has reasonable cause to believe that any law or regulation enforced by the Customs service has been violated, by reason of which the property has become subject to seizure or forfeiture." See 19

C.F.R. § 162.21.  Finally, except for diplomatic correspondence, "All mail arriving from outside the Customs territory of the United States which is to be delivered within the Customs territory of the United States and all mail arriving from outside the U.S. Virgin Islands which is to be delivered within the U.S. Virgin Islands, **is subject to Customs examination** . . . ."  See 19 C.F.R. § 145.2(b). (Emphasis added.)

In addition to the aforementioned statutory authorization to search international mail, numerous courts have examined the constitutionality of searching and seizing suspicious international parcels.

For example, in United States v. King, 517 F.2d 350 (5th Cir. 1975)[3], Customs agents examined multiple envelops sent from overseas.  Their examination was not conducted at a port-of-entry.  After tapping on the envelopes, agents discovered a "distinct pocket or cushion of powdery material."  See id. at 351.  The agent immediately opened the envelopes and discovered that each contained a Christmas card with inner packets of white powder.  The white powder proved to be opium derivatives.  See id.  In upholding the search of the package, the Fifth Circuit held:

> Whether the government inspector had the required "reasonable cause to suspect" is likewise a question which need not detain us long.  Case law emphatically demonstrates that much less than probable cause will suffice.  See id. at 352.

Specifically, the court noted that the Customs agent had "reasonable cause" to open the envelopes because: 1) the pattern of mail deliveries (numerous card size envelopes from a small group of senders with identical overseas addresses) is itself somewhat suspicious; and, 2) the

---

[3] Decisions of the Fifth Circuit, rendered prior to October 1, 1981, are binding precedent in the Eleventh Circuit until overruled by the Eleventh Circuit sitting *en banc*.  See Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981).

envelopes' unusual thickness and the powdery cushion which appeared as the packages were tapped. According to the court, these two factors were sufficient "reasonable cause." See id.

Likewise, in disposing of the appellant's Fourth Amendment argument, the court specifically noted the Sixth Circuit's determination that the "Fourth Amendment's standards applicable to mail matter moving entirely within the country are not applicable to mail matter coming in from outside the country at least where it appears that a customs determination must be made." See King at 352, *quoting* United States v. Beckley, 335 F.2d 86, 88 (6th Cir. 1964), cert. denied, sub nom. Stone v. United States, 380 U.S. 922.

In a case similar to Robinson's, the Ninth Circuit upheld the search and seizure of an international package containing controlled substances and upheld the subsequent search of the residence based upon the initial Customs seizure. See United States v. Sahanaja, 430 F.3d 1049 (9th Cir. 2005).[4]

In Sahanaja, the Postal Service attempted to deliver a Canadian package sent to Duarte, California. After failed attempts to deliver the package to the addressee, and reports that mail carries had become ill after handling it, Customs officials searched the package. The search was not conducted at a port-of-entry. Upon opening the package, agents discovered two one-gallon plastic containers labeled "hair-tonic." Rather than hair-tonic, the packages contained gamma-hydroxybutyrate ("GHB"), a schedule I controlled substance. See Sahanaja at 1050. After discovering the contraband, agents initiated a controlled delivery to Sahanaja's residence. Soon after

---

[4]The Sahanaja Court draws a clear distinction between § 482 searches and § 1582 searches. According to the Ninth Circuit, a § 1582 search applies to searches of incoming international mail, at the border, and **has no suspicion requirement**. By contrast, a § 482 search occurs far from the border and requires "reasonable cause to search." See id. at 1052.

he accepted the package, agents executed a search warrant on the residence and recovered additional controlled substances. See id.

On appeal, Sahanaja asserted the warrantless search of the package and subsequent search of his residence violated the Fourth Amendment. See id. at 1052. In upholding the mail search under § 482, the Ninth Circuit considered the package's labeling discrepancy, its foul odor, illness caused by the package, and the suspicious activity of individuals seeking to claim the package. See id. Based upon these factors, the Ninth Circuit found no constitutional infirmities and refused to suppress any of the evidence, including evidence secured via search of Sahanaja's residence.

Finally, and most importantly, in United States v. Pringle, 576 F.2d 1114 (5th Cir. 1978), the Fifth Circuit established a clear line between international mail searches conducted at a port-of-entry and international mail searches conducted at other locations. In so doing, the Court also drew a clear distinction between searches conducted pursuant to 19 U.S.C. § 482(a) and 19 U.S.C. § 1582. According to the Court, only searches conducted pursuant to 19 U.S.C. § 482(a) mandate any "reasonable cause to suspect" that the item contains contraband. See Pringle at 1116. Unlike § 482(a), 19 U.S.C. § 1582, "authorize[s] searches of all persons, baggage, merchandise, and mail entering the United States. No 'probable cause' or 'reasonable cause to suspect' is needed under [19 U.S.C. § 1582 ]." See id. at 1116.

After finding that the search of international mail conducted at a port-of-entry requires no "reasonable cause to suspect" any illegality whatsoever, the Court then examined these searches against the Fourth Amendment. Quoting the Supreme Court's decision in United States v. Ramsey, 431 U.S. 606 (1977), the Fifth Circuit applied the Supreme Court's teaching that:

> Border searches, then, from before the adoption of the Fourth Amendment, have been considered to be reasonable by the single fact that the person or item in question had entered into our country from outside. See Pringle at 1117, *quoting* United States v. Ramsey, 431 U.S. 606, 619 (1977).

Ultimately, the Fifth Circuit found no constitutional infirmity whatsoever in searching international mail at a port-of-entry. According to the Court, port-of-entry searches of international mail have no "probable cause" or "reasonable cause to suspect" requirements. See Pringle at 1118.

Applying both the aforementioned statutes and case law, Karen Robinson's argument fails. Upon arriving at a port-of-entry, nothing prohibited the search of international mail sent from Malburg, Germany, to Adam Robinson in Deatsville, Alabama. First, 19 U.S.C. § 1582 grants Customs agents statutory authority to conduct unlimited searches of international mail at the border. Furthermore, according to the Fifth Circuit and the Supreme Court's teaching in United States v. Ramsey, the Fourth Amendment finds reasonable the search of international items upon their arrival into the United States at a port-of-entry.

In the alternative, "reasonable cause to suspect" Adam Robinson's package of contraband is not difficult to find. First, the package itself is suspect because CO-2 gas is readily available in the United States and need not be imported from Germany. Second, if CO-2 gas was a rarity in the United States, one would expect a shipment of more than a single small container. Finally, a "CO-2-Set" could easily be mislabeled to secrete some other noxious substance.

### III.   PROBABLE CAUSE TO SEARCH ROBINSON'S HOME

Despite citing United States v. Leon, 468 U.S. 897, 922 (1984), and prematurely alleging no "good-faith exception" to the warrant requirement, Karen Robinson completely fails to first make any "substantial preliminary showing that an affiant knowingly and intentionally included a false

statement in an affidavit, or made the false statement with reckless disregard for its truth, and the false statement was necessary to the finding of probable cause." See Franks v. Delaware, 438 U.S. 154 (1978).

Rather, Karen Robinson merely regurgitates her attack of the initial border seizure of the silencer without understanding that Customs officials needed no suspicion to search her husband's international mail. Likewise, Robinson fails to mention that after lawfully seizing the silencer at the border, federal agents only executed an anticipatory search warrant of Robinson's home after she carried the contraband into her residence. Only when a defendant shows that there are misrepresentations in a search warrant affidavit must a court decide whether, not including the false information, there was still probable cause to search the location. See United States v. Cross, 928 F.2d 1030 (11th Cir. 1991); United States v. Weber, 808 F.2d 1422 (11th Cir. 1987); United States v. Kirk, 781 F.2d 1498 (11th Cir. 1986). Karen Robinson fails to allege a scintilla of evidence suggesting "a knowing and intentional false statement or a false statement with reckless disregard for the truth." See Franks, *supra*.

Finally, a description of property will be acceptable if it is as specific as the circumstances and nature of activity under investigation permit. See United States v. Moody, 977 F.2d 1425 (11th Cir. 1992); United States v. Wuagneux, 683 F. 2d 1343 (11th Cir. 1982). In the case at bar, federal agents sought to search Robinson's home for very particular items, including:

1)   A Weihrauch silencer;

2)   Any firearms and/or ammunition as defined in Title 18, Chapter 44, Section 921;

3)   All documents and/or data relating to the possession, transfer or purchase of firearms, to include computer equipment and or phone records.

It is difficult to imagine a more particular listing of items authorized for seizure from the Robinson home. Indeed, federal agents seized ten traditional firearms, four firearm silencers, and four destructive devices. Seizure of this obvious contraband was authorized by the warrant because all these items are defined as "firearms" under federal law. See Title 18, United States Code, Section 921(a).

For the reasons stated above, the defendant's motion should be DENIED.

Respectfully submitted this 27th day of November, 2006.

>LEURA G. CANARY
>UNITED STATES ATTORNEY
>
>/s/ Verne H. Speirs
>VERNE H. SPEIRS
>Assistant United States Attorney
>1 Court Square, Suite 201
>Montgomery, Alabama 36104
>(334) 223-7280
>(334) 223-7135 Fax
>verne.speirs@usdoj.gov

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 02:06cr223-MEF |
| | ) | |
| KAREN KILGO ROBINSON | ) | |

CERTIFICATE OF SERVICE

I hereby certify that on November 27, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Richard Keith.

Respectfully submitted,

LEURA G. CANARY
UNITED STATES ATTORNEY

/s/ Verne H. Speirs
VERNE H. SPEIRS
Assistant United States Attorney
1 Court Square, Suite 201
Montgomery, Alabama 36104
(334) 223-7280
(334) 223-7135 Fax
verne.speirs@usdoj.gov